
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA     )
                             )    No. 2:20-cr-114
     v.                      )
                             )    JUDGE Corker/Wyrick
TAMMY LYNN HAWK              )

## PLEA AGREEMENT PURSUANT TO RULE 11(c)(1)(C), FED. R. CRIM. P.

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Tammy Lynn Hawk, and the defendant's attorney, E. Lynn Dougherty, Esquire, have agreed upon the following:

1.      The defendant will waive indictment and arraignment and plead guilty to an information charging the defendant with the following offenses:

        a)      Count One.  Count one of the information charges the defendant with wire fraud in violation of 18 U.S.C. § 1343.  The punishment for this offense is as follows: a term of imprisonment of not more than 20 years, a fine of not more than $250,000, or both imprisonment and fine, supervised release of not more than three years, a special assessment in the amount of $100, forfeiture of assets as set forth below, and restitution to victims of the offense and the United States as set forth below.

        b)      Count Two.  Count two of the information charges the defendant with aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).  The punishment for this offense is as follows:  a mandatory term of imprisonment of two years that must run consecutive to any other sentence the Court imposes, a fine of not more than $250,000, a mandatory special assessment of $100, and a term of supervised release of not more than one year to follow any term of imprisonment.

c)      Count Three.  Count three charges the defendant with money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i).  The punishment for this offense is as follows: a term of imprisonment of not more than 20 years, a fine of not more than $500,000 or twice the value of the property involved in the transaction, whichever is greater, or both imprisonment and fine, supervised release of not more than three years, a special assessment in the amount of $100, forfeiture of assets as set forth below, and restitution to victims of the offense and the United States as set forth below.

d)      Count Four.  Count four charges the defendant with the offense of making and subscribing a false tax return, in violation of 26 U.S.C. § 7206(1).  The punishment for this offense is as follows:  a term of imprisonment of not more than three years, a fine of not more than $250,000, or both imprisonment and fine, supervised release of not more than one year, a special assessment in the amount of $100, and forfeiture of assets as set forth below

2.      The United States also agrees not to further prosecute the defendant in the Eastern District of Tennessee for any other criminal offenses committed by the defendant related to the charges contained in this information.

3.      The defendant has read the information, discussed the charges and possible defenses with defense counsel, and understands the crimes charged.  Specifically, the elements of the offenses are as follows:

a.      The elements of the offense of wire fraud in violation of 18 U.S.C. § 1343 are as follows:

(i).      The defendant knowingly devised a scheme to defraud in order to obtain money or property, that is using her position as a licensed realtor to swindle and defraud potential real estate investors;

2

(ii).    The scheme included a material misrepresentation or concealment of a material fact;

(iii).    The defendant had the intent to defraud; and

(iv.)    The defendant used wire, radio or television communications or caused another to use wire, radio or television communications in interstate commerce in furtherance of the scheme.

b.    The elements of the offense of aggravated identity theft in violation of 18 U.S.C. § 1028A are as follows:

(i).    The defendant committed the felony offense of wire fraud, as charged in the information;

(ii).    The defendant knowingly transferred, possessed, or used a means of identification of another person without lawful authority;

(iii).    The defendant knew the means of identification belonged to another person; and

(iv).    The transfer, possession, or use of the means of identification was during and in relation to the crime charged in the corresponding wire fraud count.

c.    The elements of the offense of money laundering are as follows:

(i).    The defendant conducted or attempted to conduct a financial transaction;

(ii).    The financial transaction involved property that represented the proceeds of wire fraud;

(iii).    The defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

3

(iv). The defendant had the intent to promote the carrying on of wire fraud.

d. The elements of the offense of making and subscribing a false tax return are as follows:

(i). Defendant made an IRS Form 1040, U.S. Individual Income Tax Return for the year 2017 which was false as to a material matter;

(ii). The IRS Form 1040, U.S. Individual Income Tax Return contained a written declaration that it was made under penalty of perjury;

(iii). When defendant made the IRS Form 1040, U.S. Individual Income Tax Return, she knew it contained materially false information; and

(iv). When the Defendant did so, she acted willfully, that is, she intended to do something she knew violated the law.

4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

At all times pertinent to the Information, defendant was a licensed real estate agent in the state of Tennessee. Defendant also held herself out to be affiliated with a Florida Limited Liability Company, HomeSource Direct, LLC. On a day-to-day basis, defendant dealt with customers who placed their trust and confidence in defendant based upon her status, qualifications, and experience as a licensed realtor.

Beginning no earlier than December 16, 2015, defendant devised a scheme to defraud potential real estate investors out of thousands of dollars by misrepresenting to them the ownership

4

status and real price of real properties for purchase and sale. Under her scheme, defendant often falsely would tell potential investors (usually current or prior clients) about parcels of real property that she could arrange to sell, and the investors, in turn, could resell and realize substantial gains. Often, defendant would falsely represent that she already had a potential buyer lined up to purchase the property at a higher price than the price the investor would pay. Under her scheme, defendant routinely advised potential investors that once they agreed to the transaction and paid her the amount needed to cover the purchase price, a company called Home Source Direct, LLC would purchase the property, sell it to the investor, and the investor could then either sell the property to a buyer defendant already had waiting or could easily "flip" the property and realize substantial profits and gains. Under her scheme, defendant typically would require cash payments and would provide the investors with phony contracts reflecting Home Source Direct, LLC as the seller of the property and the victim investor as the purchaser. Investors would provide significant cash payments to defendant, thinking they were purchasing a specific parcel of real property.

In reality, neither defendant nor Home Source Direct, LLC owned the properties defendant was offering to sell and on account of which defendant was accepting investors' payments. Defendant instead would take the victims' payments and use the funds for her own personal expenses or to repay prior victims of her swindle. Many times, defendant used investor funds to engage in travel junkets and gambling. Occasionally, defendant would repay an investor, but these repayments often were with funds provided by new investors. In essence, defendant was taking substantial sums of money for properties she did not own and could not transfer.

As part of her scheme, defendant used interstate wire transmissions. For instance, defendant routinely communicated with investors and others through an email account, hawk.tammy@yahoo.com. Communications to and from this email address take place through

5

Yahoo computer servers located outside the state of Tennessee. Defendant also used form contracts provided by Home Source Direct, LLC and engaged in wire transmissions between Tennessee and Home Source Direct, LLC in Florida. And, defendant routinely used an electronic document signing service with servers located outside the state of Tennessee for document execution purposes. Defendant also used sham contracts to hide and conceal the true nature of what she was doing. The sham contracts provided a sense of legitimacy to victim investors, but in reality, defendant was simply taking their money.

### Facts Pertaining to Count One (Wire Fraud)

As part of her scheme, on May 1, 2019, defendant contacted Sidney Mullins and Roy Lewis about a property located at 1516 Vance Drive in Bristol, Tennessee. Defendant had listed the property as a real estate agent for a seller named Mark Miller who was in Bloomington, Indiana. Defendant did not advise Sidney Mullins and Roy Lewis of that fact, though. Instead, she told them the property was a good house to flip, and the price was cheap. Mullins and Lewis went that same day to look at the house and told defendant they were interested. Defendant then told them she had to have $89,000 for the property, but Mullins and Lewis told her they would give her only $85,000. Defendant agreed to take $85,000 for the property, but stated that she had other people waiting, so she needed a certified check that day made out to defendant.

Lewis then went to Eastman Credit Union, got a certified check for $85,000, and gave it to defendant. Defendant endorsed the check and deposited the $85,000 check into her own Best Checking account at the Knoxville TVA Employee's Credit Union. Defendant promised a quick closing in seven to ten days. No closing took place. For weeks, defendant routinely came up with different excuses for not closing, such as others sending the wrong papers and the LLC papers on Home Source being lost.

6

In order to close the purchase, Mullins and Lewis planned to use an attorney named A.D. Jones. A.D. Jones set multiple closing dates, but defendant always made an excuse about why she could not make the closing. Defendant routinely used interstate wire transmissions when doing so, including transmissions from defendant's Yahoo email account with the address of hawk.tammy@yahoo.com. For example, in one email dated June 20, 2019, defendant falsely claimed that the property would be titled in the name of the owner of Home Source:

**From:** Tammy Hawk <hawk.tammy@yahoo.com>
**To:** "adj@btes.tv" <adj@btes.tv>
**Date:** 06/20/2019 10:47 AM
**Subject:** Vance drive

chad from home source called last night said will have vance drive in
his name monday by noon..how long we need to wait till we good to go
with sid

The closing never took place, and defendant used the monies she received from Mullins and Lewis for her own personal use and to repay other victims.

**Facts Pertaining to Count Two (Aggravated Identity Theft)**

As part of the wire fraud alleged in count one, above, defendant possessed and used the name of victim Sidney Mullins, a means of identification of Sidney Mullins. Specifically, defendant forged the name of Sidney Mullins to a purchase and sale agreement as the purchaser of real property located at 1516 Vance Drive in Bristol Tennessee. In the agreement containing Mullins' forged signature, Mullins purportedly agreed to purchase the property from Mark Miller for $219,000. In reality, Mullins had provided money to defendant with the understanding he was purchasing the property from Home Source Direct, LLC. for $85,000. Mullins never signed any contract to purchase the property from Mark Miller, but defendant fraudulently signed Mullins name to the purchase and sale agreement as follows:

7

Buyer hereby makes this offer.

BUYER _____

BUYER _____

5/1/19   at  10   o'clock ☐ am/ ☐ pm

Offer Date

at _____ o'clock ☐ am/ ☐ pm

Offer Date

Upon seeing this document, Mullins immediately recognized the document was forged because the printed terms of the contract correctly spelled his name as "Sidney Mullins," but in the forged signature, defendant signed the name as "Sydney Mullins," using a "y" instead of an "i."

### Facts Pertaining to Count Three (Money Laundering)

Defendant's wire fraud routinely generated cash proceeds in the form of deposits that defrauded investors believed they were providing to defendant for the purchase of actual parcels of real estate. Often, defendant would deposit these proceeds into her personal Best Checking account at her financial institution, Knoxville TVA Employees Credit Union. After depositing the proceeds, defendant would then engage in one or more financial transactions with the proceeds. When doing so, defendant intended to promote and carry on her scheme, often by disguising new investors' money as returns to previous investors.

An example is defendant's fraud perpetrated on Sydney Mullins and Ray Lewis. On May 1, 2019, defendant obtained a cashier's check in the amount of $85,000 that was purportedly the purchase price for a parcel of real property located at 1516 Vance Drive in Bristol, Tennessee. Defendant endorsed the check and deposited that check, which constituted the proceeds of defendant's wire fraud, into her Best Checking account at Knoxville TVA Employees Credit Union. After depositing the proceeds, defendant then engaged in a series of financial transactions designed to promote and continue her ongoing scheme. One of those transactions took place on May 1, 2019, and consisted of defendant making a share withdrawal of $35,000 and using those funds to repay a victim investor named Kelly Fleenor for money Kelly Fleenor had previously paid to defendant for

8

a prior sham real estate transaction. These transactions are memorialized in the May 2019 bank statement for defendant's Best Checking account at Knoxville TVA Employees Credit Union as follows:

| | | | | |
|---|---|---|---|---|
| 05-01 | SHARE DEPOSIT | 85,000.00 | | 85,431.64 |
| 05-01 | SHARE WITHDRAWAL | | -40,000.00 | 45,431.64 |
| 05-01 | SHARE WITHDRAWAL | | -35,000.00 | 10,431.64 |
| 05-02 | SHARE DEPOSIT | | | |

### Facts Pertaining to Count Four (Making and Subscribing a False Tax Return)

Throughout the course of her scheme, defendant routinely filed false income tax returns that omitted the sums she had received by virtue of her scheme or failed to file income tax returns in an effort to hide and conceal the ongoing nature of her scheme. Defendant's 2017 tax return is an example.

On or about April 11, 2018, defendant filed with the Internal Revenue Service a Form 4868, Application for Automatic Extension of Time To File U.S. Individual Income Tax Return for the 2017 tax year. Then, on or about January 31, 2019, defendant filed with the Internal Revenue Service a Form 1040, U.S. Individual Income Tax Return for the 2017 tax year. That return stated that her taxable income for the calendar year 2017 was the sum of $58,037.00, and the amount of tax due and owing thereon was the sum of $9,200.00. In fact, as defendant well knew, her taxable reported income for the calendar year 2017 did not include money defendant obtained from her scheme, and her actual income was the sum of $221,987.00, upon which taxable income an income tax of $57,785.00 was due and owing to the United States.

### Specific Offense Characteristic Tax Loss Amount

Defendant stipulates and agrees that defendant's misrepresentation and failure to disclose her relevant income and taxes owed for tax years 2015, 2016, and 2018 constitute relevant conduct for purposes of this plea agreement.

9

With regard to tax year 2015, on or about April 12, 2016, defendant filed with the Internal Revenue Service a Form 1040, U.S. Individual Income Tax Return. That return stated that joint taxable income for tax year 2015 was the sum of $132,386.00, and the amount of tax due and owing thereon was the sum of $29,257.00. In fact, as she then and there knew, defendant's reported taxable income for the 2015 tax year did not include money defendant obtained from her scheme, and her actual income was the sum of $175,226.00, upon which she owed to the United States an income tax of $42,711.00.

With regard to tax year 2016, on or about February 27, 2017, defendant filed with the Internal Revenue Service a Form 1040, U.S. Individual Income Tax Return. That return stated that her taxable income for tax year 2016 was the sum of $5,831.00, and the amount of tax due and owing thereon was the sum of $1,315.00. In fact, as she then and there knew, defendant's reported taxable income for the 2016 tax year did not include money defendant obtained from her scheme, and her actual income for the calendar year was the sum of $44,831.00, upon which she owed the United States an income tax of $8,522.00.

With regard to tax year 2018, defendant failed to file a tax return and thus did not report her income at all, including $61,500 in money defendant obtained from her scheme for that year. As such, defendant failed to have prepared and timely filed her 2018 Form 1040, U.S. Individual Income Tax Return. That return should have stated that her taxable income for tax year 2018 was $85,277.00, upon which taxable income was due and owing to the United States an income tax of $19,829.00.

For the purposes of determining the applicable offense level under USSG §§2T1.1 and 2T4.1, defendant stipulates and agrees that the tax loss resulting from the defendant's violation of 26

10

U.S.C. § 7206(1) and relevant conduct related to that violation was greater than $100,000 and not more than $250,000.

**Specific Offense Characteristic – Losses between $550,000 to $1,500,000**

Defendant stipulates and agrees that losses in this case attributable to her wire fraud are more than $550,000, but do not exceed $1,500,000. Therefore, defendant stipulates and agrees that a 14-level increase is appropriate under USSG §2B1.1(b)(1)(H). As part of this plea agreement, defendant stipulates and agrees that the following table identifies victims of her scheme and the amount of actual or intended loss attributable to her dealings with each victim:[1]

| Victim Name | Date(s) | Actual or Intended Loss Amount(s) |
| --- | --- | --- |
| Jeffrey B. Mahaffey | December 2015<br>January 2016<br>April 2016<br>June 2016<br>August 2018 | $8,500<br>$9,000<br>$39,000<br>$42,000<br>$65,000 |
| Penny Hawk | March 2017<br>March 2019 | $23,000<br>$34,000 |
| | April 2019 | $9,500 |
| Bob and Debbie Chapman | November 2017<br>March 2019<br>May 2019 | $38,950<br>$14,000<br>$14,000 |
| Brenda and June Gill | June 2017<br>October 2017 | $40,000<br>$9,000 |
| Joe Minor | November 2017<br>March 2019<br>May 2019<br>June 2019 | $49,000<br>$25,000<br>$9,000<br>$25,000 |

---

[1] This table represents the best estimate of loss for purposes of the United States Sentencing Guidelines. Based on the nature of her scheme, defendant often used funds from one victim to repay a previous victim. This table is for purposes of loss only and does not reflect amounts owed for restitution.

| | | |
|---|---|---|
| Deborah Tolliver | January 2019 | $25,000 |
| Kelly Fleenor | February 2019 | $34,000 |
| Wilma Glover | March 2019 | $34,000 |
| Randall Hawes | March 2019 | $40,000 |
| Kevin Reep | April 2019<br>May 2019 | $40,000<br>$80,000 |
| Joseph David Hatcher | April 2017 | $20,000 |
| Bobby Barr | April 2018 | $29,500 |
| Michael Scalf | May 2017 | $9,000 |
| Sidney Mullins and Ray Lewis | May 2019 | $85,000 |
| Rick Sheets | May 2019 | $17,000 |
| Richard King | June 2019 | $125,000 |
| Scott Blankenship | May 2019 | $20,000 |
| Brad Buchanan | August 2017 | $15,000 |
| Mike and Mitze Breuninger | February 2019 | $55,000 |
| Doug Robinette | January 2019 | $18,000 |

**Specific Offense Characteristic – 10 or More Victims**

As part of her scheme, defendant defrauded more than ten victims as noted in the table above.  Therefore, defendant stipulates and agrees that a two-level increase is appropriate under USSG §2B1.1(b)(2)(A)(i).

12

## **Specific Offense Characteristic – Fraud During a Bankruptcy Proceeding**

Once defendant realized that she would be unable to repay all the individuals she had defrauded as well as her other creditors, defendant filed a petition for relief under the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Tennessee and commenced the case styled, *In re Tammy Lynn Hawk*, Case No. 2:19-BK-50206. As part of that case, on May 8, 2019, defendant filed a sworn statement of financial affairs and sworn schedules of assets and liabilities. In those documents defendant knowingly made a number of false statements. For example, defendant failed to disclose the income she had received through her scheme and other sources in 2019:

| Part 2 | Explain the Sources of Your Income | | | |
|---|---|---|---|---|

4. Did you have any income from employment or from operating a business during this year or the two previous calendar years?
Fill in the total amount of income you received from all jobs and all businesses, including part-time activities
If you are filing a joint case and you have income that you receive together, list it only once under Debtor 1

☐ No
■ Yes. Fill in the details.

| | Debtor 1 | | Debtor 2 | |
|---|---|---|---|---|
| | **Sources of income**<br>Check all that apply. | **Gross income**<br>(before deductions and exclusions) | **Sources of income**<br>Check all that apply | **Gross income**<br>(before deductions and exclusions) |
| From January 1 of current year until the date you filed for bankruptcy: | ■ Wages, commissions, bonuses, tips | $2,572.01 | ☐ Wages, commissions, bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

Defendant also misrepresented and failed to disclose the amount of income she had received in 2017 and 2018 through her scheme and listed her income as follows during those years:

13

Debtor 1    Tammy Lynn Hawk                                    Case number (if known)    2:19-bk-50206

| | Debtor 1 | | Debtor 2 | |
| --- | --- | --- | --- | --- |
| | Sources of income<br>Check all that apply. | Gross income<br>(before deductions and<br>exclusions) | Sources of income<br>Check all that apply. | Gross income<br>(before deductions<br>and exclusions) |
| For last calendar year:<br>(January 1 to December 31, 2018 ) | ■ Wages, commissions,<br>bonuses, tips | $58,035.29 | ☐ Wages, commissions,<br>bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |
| For the calendar year before that:<br>(January 1 to December 31, 2017 ) | ■ Wages, commissions,<br>bonuses, tips | $51,106.00 | ☐ Wages, commissions,<br>bonuses, tips | |
| | ☐ Operating a business | | ☐ Operating a business | |

Additionally, defendant fraudulently failed to disclose the debts owed to any of the individuals she had swindled, including the debt to Sidney Mullins and Roy Lewis, even though she had just taken $85,000 from them a week before her bankruptcy filing.

Therefore, defendant stipulates and agrees that this case involves a misrepresentation or fraudulent conduct during the course of a bankruptcy proceeding, and a two-level increase is appropriate under USSG §2B1.1(b)(9)(B).

### Specific Offense Characteristic – Sophisticated Means

As noted above, as part of her scheme, defendant used multiple sham contracts, a computerized signature program that permitted active concealment of her fraud, at least one forged signature, and numerous other false documents to hide and conceal what she was doing. Defendant also used her relationship with Home Source Direct, LLC, a business entity located in the state of Florida to perpetrate her scheme and provide an aura of legitimacy that did not exist. Defendant further made false statements in Internal Revenue Service tax returns and made false representations in her bankruptcy case to further hide and conceal her offense. Accordingly, defendant stipulates and agrees that a two-level increase for sophisticated means is appropriate under USSG §2B1.1(b)(10)(C).

14

**Adjustment for Abuse of Position of Trust**

Defendant used her position of private trust and her special skill as a licensed real estate agent to commit these crimes. Often, defendant identified her victims from their status as prior real estate customers. In addition, defendant's status as a licensed real estate agent was a centerpiece to defendant's scheme, and the defrauded investors placed trust and confidence in defendant as a result of that status. Therefore, defendant stipulates and agrees that a two-level increase for abuse of a position of trust and use of a special skill is appropriate under USSG §3B1.3.

5. The defendant is pleading guilty because the defendant is in fact guilty. The defendant understands that, by pleading guilty, the defendant is giving up several rights, including:

    a) the right to be indicted by a grand jury for these crimes;

    b) the right to plead not guilty;

    c) the right to a speedy and public trial by jury;

    d) the right to assistance of counsel at trial;

    e) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    f) the right to confront and cross-examine witnesses against the defendant;

    g) the right to testify on one's own behalf, to present evidence in opposition to the charges, and to compel the attendance of witnesses; and

    h) the right not to testify and to have that choice not used against the defendant.

6. Pursuant to Rule 11(c)(1)(C), the defendant and the United States agree that a 10 year term of imprisonment followed by a three-year term of supervised release is the appropriate disposition of this case. Additionally, the Court may impose any lawful fines and any special assessment fees as required by law, and order forfeiture as applicable and restitution as appropriate.

15

In the event the Court declines to accept this agreement, either party will be free to withdraw from the plea agreement.

7.     If the Court orders the defendant to pay restitution to the IRS for the failure to pay tax, either directly as part of the sentence or as a condition of supervised release, the IRS will use the restitution order as the basis for a civil assessment. *See* 26 U.S.C. § 6201(a)(4). The defendant does not have the right to challenge the amount of this assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor the defendant's timely payment of restitution according to that schedule will preclude the IRS from administrative collection of the restitution-based assessment, including levy and distraint under 26 U.S.C. § 6331.

8.     Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

9.     The defendant agrees to pay the special assessment in this case prior to sentencing.

16

10.     Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that were used and intended to be used in any manner or part to commit and to facilitate the commission of a violation of 18 U.S.C. §§ 1343 and 1956(a)(1)(A)(i), and/or any and all assets and property, or portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities which are in the possession or control of the defendant or the defendant's nominees.

The defendant agrees to forfeit the defendant's interest in the following properties: A personal money judgment in the amount of $307,550.00 in favor of the United States and against the defendant, Tammy Lynn Hawk, which represents proceeds the defendant personally derived from the offense of 18 U.S.C. § 1343.

The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

In the event a money judgment forfeiture is ordered, the Defendant agrees to send all money judgment payments to the United States Department of the Treasury. Defendant also agrees that the

17

full money judgment amount shall be considered due and payable immediately. If the defendant

cannot pay the full amount immediately and is placed in custody, the defendant agrees that the

Bureau of Prisons will have the authority to establish payment schedules to ensure payment of the

money judgment. The defendant further agrees to cooperate fully in efforts to collect on the money

judgment by set-off of federal payments, execution on non-exempt property, and any other means

the United States deems appropriate. The defendant and counsel also agree that the defendant may

be contacted post-judgment regarding the collection of the money judgment without notifying

defendant's counsel and outside the presence of the defendant's counsel.

11.     The defendant agrees that the Court shall order restitution, pursuant to any applicable

provision of law, for any loss caused to: (1) the victims of any offense charged in this case

(including dismissed counts); and (2) the victims of any criminal activity that was part of the same

course of conduct or common scheme or plan as the defendant's *charged* offenses.

12.     Financial Obligations. The defendant agrees to pay all fines and/or restitution to the

Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be

considered due and payable immediately. If the defendant cannot pay the full amount immediately

and is placed in custody or under the supervision of the Probation Office at any time, the defendant

agrees that the Bureau of Prisons and the Probation Office will have the authority to establish

payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to

cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of

federal payments, execution on non-exempt property, and any other means the United States deems

appropriate. The defendant and counsel also agree that the defendant may be contacted post-

judgment regarding the collection of any financial obligation imposed by the Court without

notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to

18

facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

      a)     If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

      b)     The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      c)     If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's Office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

13.     The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offenses committed, the defendant voluntarily, knowingly, and intentionally agrees to the following:

      a)     The defendant will not file a direct appeal of the defendant's convictions or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the greater of ten years or the sentencing guideline range determined by the Court or above any

19

mandatory minimum sentence deemed applicable by the Court, whichever is greater. The defendant also waives the right to appeal the Court's determination as to whether the defendant's sentence will be consecutive or partially concurrent to any other sentence.

         b)      The defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a § 2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel.

         c)      The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

      14.      This plea agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this plea agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this plea agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or speedy trial

or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

15. The terms of this plea agreement, including the terms regarding restitution, shall in no way limit the ability or right of the IRS to assess and collect taxes, interest, and penalties, if determined to be owed by defendant. This paragraph shall include, without limitation, any civil fraud penalties imposed by 26 U.S.C. § 6663. The defendant agrees that, prior to the date of sentencing, she shall file or cause to be filed amended Forms 1040 for 2016, 2017, and 2018 as well as a Form 1040 for 2019 and shall, upon request from any representative of the IRS, provide any requested information and back-up documentation for those referenced forms. The defendant shall not, subsequent to filing those amended and initial Forms 1040 file any claims for refunds of taxes, penalties, and interest attributable to those forms.

16. Notwithstanding any terms of this plea agreement to the contrary, this plea agreement is expressly conditioned upon approval by the Department of Justice, Criminal Tax Division. This plea agreement shall not be enforceable in any respects until that approval is provided. In the event that the Department of Justice, Criminal Tax Division does not provide that approval, this plea agreement shall be null and void and not enforceable against the United States.

17. The United States will file a supplement in this case, as required in every case by the Local Rules of the United States District Court for the Eastern District of Tennessee, even though there may or may not be any additional terms. If additional terms are included in the supplement, they are hereby fully incorporated herein.

18. This plea agreement and supplement constitute the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced

21

charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

J. DOUGLAS OVERBEY
UNITED STATES ATTORNEY

12/3/2020
_____
Date

By: _____
Mac D. Heavener, III
Assistant United States Attorney

12/1/2020
_____
Date

_____
Tammy Lynn Hawk
Defendant

12/2/2020
_____
Date

_____
E. Lynn Dougherty
Attorney for the Defendant

22